# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENJI BARNETT,<br><br>               Plaintiff,<br><br>   v.<br><br>MATTHEW CATE, et al.,<br><br>               Defendants. | CASE NO. 1:10-cv-00842-JLT PC<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>(Doc. 1) |

I.      **Screening Requirement**

Plaintiff, Kenji Barnett, is a state prisoner proceeding pro se and in forma pauperis.  He has filed this civil rights action pursuant to 42 U.S.C. § 1983 to challenge his placement in the Special housing Unit ("SHU") due to Defendants' determination that he is a gang member.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or

1

1  appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. §

2  1915(e)(2)(B)(ii).

3

4       A complaint must contain "a short and plain statement of the claim showing that the

5  pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

6  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

7  conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S.Ct. 1937, 1949

8  (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and

9  courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572

10 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual

11 allegations are accepted as true, legal conclusions are not.  Iqbal, 556 U.S. at __, 129 S.Ct. at

12 1949.

13       Under section 1983, Plaintiff must demonstrate that each defendant personally

14 participated in the deprivation of his rights.  Iqbal, 556 U.S. at __, 129 S.Ct. at 1949; Jones v.

15 Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations

16 sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at __, 129 S.Ct. at 1949-50; Moss

17 v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct

18 falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at __, 129 S.Ct. at 1949-50;

19 Moss, 572 F.3d at 969.

20 **II.    Plaintiff's Complaint**

21      **A.    Summary of Allegations**

22       Plaintiff was validated as a prison gang member of the Black Guerilla Family ("BGF") in

23 2008 at the Ironwood State Prison in Blythe, California and assessed an indeterminate term in the

24 SHU.  (Doc. 1 at 7.)  Plaintiff challenges the initial validation decision, and subsequent decisions

25 by several Institutional Classification Committees, as well as administrative appeal decisions

26 addressing his claims regarding the prison's validation procedures.  (Id. at 7-11.)  More

27 specifically Plaintiff alleges as follows:  On May 12, 2008, Defendant Covello placed Plaintiff in

28 segregation lock-up following the conclusion of a five day investigation into Plaintiff's status as

1  an associate of the Black Guerilla Family ("BGF").  (Doc. 1 at 7.)  Some time shortly after this

2  initial placement, Plaintiff was provided copies of evidence and a form with which to provide a

3  written rebuttal.  (Id. at 8.)  However, Plaintiff was never personally interviewed by either

4  Defendants D. Williams or G. Williams or any other prison officials or provided an opportunity

5  to dispute the information in person prior to the decision to validate Plaintiff as a BGF member.

6  (Id. at 8.)

7        On May 15, 2008 Defendants Berwer, Burt, and Kiser (members of the Office of

8  Correctional Safety ("OCS")) reviewed Plaintiff's validation packet and found the following

9  three source items in support of his validation including : (1)  Plaintiff's tattoos associated with

10  the BGF; (2)  a piece of paper with the name and the California Department of Corrections and

11  Rehabilitation ("CDCR") number of a validated BGF member discovered during a search of

12  Plaintiff's personal property; and (3) written materials utilized for training and recruitment with

13  the BGF also discovered during the search of Plaintiff's personal property.  (Doc. 1 at 7, 50.)  In

14  light of these findings, on May 15, 2008, the OCS staff validated Plaintiff as an associate of the

15  BGF.  (Id. at 7.)

16        On May 21, 2008, Plaintiff appeared, at his initial Institutional Classification Committee

17  ("ICC") hearing, where Defendants Dexter, Payton, McDowell, and Browder determined that

18  Plaintiff placement in the SHU for an indeterminate term was warranted and further

19  recommended that he be transferred to either Pelican Bay State Prison or Corcoran State Prison.

20  (Doc. 1 at 7-8.)

21        Plaintiff's SHU status has subsequently been reconsidered by multiple committee review

22  hearings.  (Doc. 1 at 8-9.)  At each review, the Committee endorsed Plaintiff's continued SHU

23  housing and ignored Plaintiff's disagreement with the findings.  (Id. at 8.)  Plaintiff asserts that

24  Defendants Cate, (CDCR Director), Dexter, and Gonzalez (Wardens at CCI and Ironwood State

25  Prison respectively), "supported" the validation and subsequent decisions of prison employees

26  and that all "Supervisory" Defendants participated in the formulation and enforcement of policies

27  regarding the validation process.  (Doc. 1 at 12.)

28        Plaintiff contends that the tattoos and confiscated items of personal property are

3

1   legitimate expressions of speech and do not violate either CDCR rules or state or federal

2   constitutions.  (Doc. 1 at 11, 22, 23.)  Additionally Plaintiff asserts that the evidence in support of

3   the investigator's validation findings was both unreliable and insufficient to meet requirements

4   established in 15 CCR § 3378 as well as those provided under the "Castillo Settlement Written

5   Manual."  (Id. at 10.)  Plaintiff also contends Defendants' actions constitute both retaliation for

6   his religious beliefs and discrimination in that the validation process is "inherently racist to

7   African Americans and Hispanics."  (Id. at 10, 16 & 17.)

8        Based on these allegations, Plaintiff asserts claims for relief under section 1983 for

9   violation of the First and Eight Amendments and the Due Process and Equal Protection Clauses

10  of the Fourteenth Amendments; for violation of section 1985 for conspiracy to deprive Plaintiff

11  of his constitutional rights; and for violations of state constitutional law and the penal code

12  regulations.

13  **III.    Deficiencies in Plaintiff's Complaint**

14          **A.       Section 1983 Linkage Requirement**

15          Under § 1983, Plaintiff must demonstrate that each defendant personally participated in

16  the deprivation of his rights.  Jones, 297 F.3d at 934.  In other words, Plaintiff must link each

17  named defendant with some affirmative act or omission that demonstrates a violation of

18  plaintiff's federal rights.  This linkage requirement mandates that Plaintiff name an individual

19  defendant for each alleged violation so that the actions of each officer is clearly outlined.

20  Government officials may not be liable for the actions of their subordinates under a theory of

21  respondeat superior.  Iqbal, 129 S.Ct. at 1948.  Since a government official cannot be held liable

22  under a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts

23  showing the official has violated the Constitution through his own individual actions.  Id. at

24  1948.  Finally, the presentation of factual allegations must be sufficient to state a plausible claim

25  for relief.  Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.  The mere possibility of

26  misconduct falls short of meeting this plausibility standard.  Id.

27          Here Plaintiff has failed to sufficiently identify sufficient facts showing any of the

28  "supervisory" Defendants violated the Constitution through their own individual actions.  Mere

supervision of individuals responsible for a violation is not enough.  In addition, the Complaint

lacks factual allegations to sufficiently connect the other named Defendants to any of the alleged

constitutional violations.  The Court will grant Plaintiff leave to amend his complaint in this

regard.  To so do he needs to set forth sufficient facts showing that each, acting under color of

law, personally took some action that violated his constitutional rights.

### B.    Due Process Claims

#### 1.    Lack of an Opportunity To Be Heard and Absence of "Some Evidence" in Support of Segregation

The Due Process Clause protects against the deprivation of liberty without due process of

law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to invoke the protection of the

Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the

protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state

law.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  The Due Process Clause itself does not

confer on Plaintiff a liberty interest in avoiding "more adverse conditions of confinement."  Id.;

Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  "[T]he touchstone of the inquiry into the

existence of a protected, state-created liberty interest in avoiding restrictive conditions of

confinement is not the language of regulations regarding those conditions but the nature of those

conditions themselves 'in relation to the ordinary incidents of prison life.'"  Wilkinson, at 223

(quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).  State-created liberty interests are limited

to freedom from restraint which "imposes atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life."  Sandin, at 484.

Assuming prisoners have a protected liberty interest in avoiding long term confinement in

segregated housing, the assignment of validated gang members and associates to such housing is

an administrative measure rather than a disciplinary measure, and is "essentially a matter of

administrative discretion."  Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz

v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)).  As a result, prisoners are entitled to the

minimal procedural protections of adequate notice, an opportunity to be heard, and periodic

review.  See Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994) (holding prisoner's due process

1  rights were not violated when he was notified of a reclassification and had an opportunity to

2  present his views); Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990) (noting due process

3  requires a prisoner have the opportunity to present his views to the official deciding whether to

4  transfer the prisoner to administrative segregation).  In addition to these minimal protections,

5  there must be "some evidence" supporting the decision.  Id. (citing Superintendent v. Hill, 472

6  U.S. 445, 454 (1985)).

7       The "some evidence" standard sets a low bar, consistent with the recognition that

8  assignment of inmates within prisons is "essentially a matter of administrative discretion,"

9  subject to "minimal legal limitations."  Bruce, 351 F.3d at 1287 (citing Toussaint, 801 F.2d 1080,

10  with respect to the minimal limitations).  A single piece of evidence may be sufficient to meet the

11  "some evidence" requirement, if that evidence has "sufficient indicia of reliability."  Id. at 1288;

12  Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) ("relevant question is whether there is any

13  evidence in the record that could support the conclusion reached by the disciplinary board"

14  (citing Hill, 472 U.S. at 455–56 (emphasis in original)).

15      In applying this standard the court is not required to "examine the entire record,

16  independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is

17  whether there is any evidence in the record that could support the conclusion.'"  Bruce, 351 F.3d

18  at 1287 (citing Hill, 472 U .S. at 455–56).

19      Here, Plaintiff alleges that though he was provided an opportunity to present his views to

20  the OCS (Defendants Burt, Berwer, and Kisser) with the submission of written documents to the

21  OCS staff, he was not afforded an opportunity to be heard "via personal appearance."  (Doc. 1 at

22  8.)  Additionally, Plaintiff alleges that the evidence in support of the validation is unreliable and

23  does not meet the requirements established in CCR Title 15 Section 3378 and the "Castillo"

24  Settlement agreeement.  (Id. at 10.)  More specifically, Plaintiff argues the three source items

25  used to support his validation were insufficient to support the validation.

26      In this regard, Plaintiff first asserts that Defendant William's finding that two of

27  Plaintiff's tattoos, a facial tattoo of a "Silver Back Gorrilla" and tattoo of an "AK-47" were

28  known BGF symbols was in error because:  (1) Plaintiff never acknowledged that Gorilla tattoo

was in fact a tattoo of a "Silver Back Gorrilla" and (2) the finding regarding the "AK-47" is not

legally valid, or indicate either a "factual" or "actual" association with the BGF. (Doc. 1 at 9.)

Plaintiff also contends that Defendant's Williams statement regarding a document indicating the

name and CDCR number of an "alleged" gang member does not meet "even a low threshold of

reliability."[1] (Id. at 9-10.) For reasons discussed below, the Court finds that Plaintiff's

allegations here are insufficient.

  As an initial matter, Plaintiff additionally alleges that he was validated in violation of the

settlement agreement in the Castillo case.[2] However, Plaintiff may not rely upon the violation of

that settlement agreement to state a claim under section 1983 because the agreement did not have

the effect of creating or expanding Plaintiff's constitutional rights. See Cagle v. Sutherland, 334

F.3d 980, 986-87 (9th Cir. 2003) (consent decrees often go beyond constitutional minimum

requirements, and do not create or expand rights); Green v. McKaskle, 788 F.2d 1116, 1123 (5th

Cir. 1986) (remedial decrees remedy constitutional violations but do not create or enlarge

constitutional rights). In determining whether Plaintiff has stated a claim, the Court looks to

whether Plaintiff's factual allegations support his claim that his constitutional rights were

violated rather than to simply whether or not there has been an alleged breach of an agreement in

a different case.[3] Id.; also Garcia v. Stewart, No. C 06-6735 MMC (PR), 2009 WL 688887, at

*7-8 (N.D.Cal. Mar. 16, 2009) (section 1983 claim based on non-compliance with Castillo

agreement not cognizable).

  In this instance, prior to the Plaintiff's validation, officials provided Plaintiff with both

notice and opportunity to be heard, albeit through the submission of a written document.

---

[1] Plaintiff also contends that the third source item, excerpts from an alleged BGF training manual does not similarly constitute factual evidence of "actual" association. (Doc. 1 at 10.) Because the "some evidence" standard is met with the evidence provided at source items one and two, we decline to address Plaintiff's allegations regarding the third source item.

[2] The Court takes judicial notice of case number 3:94-cv-02847-MJJ (N.D.Cal.), Castillo v. Marshall, et al.

[3] Moreover, if Plaintiff is a member of the class covered by the Catillo settlement, he must claim a breach of that agreement through the class representative and within that case; he may not do so through his own, separate lawsuit. See McNeil v. Guthrie, 945 F.2d 1163, 1165 (10th Cir. 1991) (individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions cannot be brought where there is a pending class action suit involving the same subject matter).

1   Nothing more is required.  Bruce, 351 F.3d at 1287 (holding that due process requires that prison

2   officials provide the inmate with notice of the charges and an opportunity to present his views to

3   the prison official charged with deciding whether to transfer him to the SHU).  Even if, as

4   Plaintiff alleges, an initial personal interview required by CDCR regulations did not occur,

5   Plaintiff has still failed to state a cognizable claim.  Walker v. Sumner, 14 F.3d 1415, 1420 (9th

6   Cir. 1994) ("[I]f state procedures rise above the floor set by the due process clause, a state could

7   fail to follow its own procedures yet still provide sufficient process to survive constitutional

8   scrutiny").  The prisoner may present his views by providing a written statement or oral

9   presentations if prison officials believe a written statement would be ineffective.  Hewitt v.

10  Helms, 459 U.S. 460, 476 (1983). "So long as this occurs, and the decision maker reviews the

11  charges and then-available evidence against the prisoner, the Due Process Clause is satisfied."

12  Id.

13       Additionally, the Court finds that Plaintiff's allegations suggesting that there was

14  insufficient evidence to validate him as a gang member are not plausible.  As stated above, the

15  "some evidence" standard sets a low bar and the court need not examine the entire record.  Here,

16  Prison officials reliance on Plaintiff's tattoos of known gang symbols and the document with the

17  name and CDCR number of an individual previously validated as a member of the BGF is

18  sufficient under the "some evidence" standard.

19       **2.    Periodic Reviews**

20       In  conclusory fashion, Plaintiff alleges that he did not receive meaningful Classification

21  Committee reviews, asserting the reviews were conducted in a "rote and perfunctory manner"

22  without "sufficient individualized findings."  (Doc. 1 at 11.)

23       Segregation "may not be used as a pretext for indefinite confinement," Toussaint v.

24  McCarthy, 801 F.2d 1080, 1101 (abrogated in part on other grounds by Sandin, 515 U.S. 472

25  (1995),  but quoting Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983)).  Due process therefore

26  requires that following Plaintiff's validation and confinement to segregated housing, Plaintiff be

27  given periodic reviews of his confinement which amount to more than "meaningless gestures,"

28  Toussaint, 801 F.2d at 1101-02.

In this instance, there are no specific facts alleged to support the claim of denial of due process relating to periodic review, other than his general claim that the subsequent decisions rested on circumstantial, rather than factual, information.  These allegations are not sufficient to support a claim.  Further, there are no factual allegations linking any of the named Defendants to the denial of constitutionally adequate periodic reviews.  Therefore, Plaintiff fails to state a claim.

### 3.   Appeals

Although not entirely clear, Plaintiff apparently contends additionally that his administrative appeals were improperly evaluated.  (Doc. 1 11, 14.)  Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation.  George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted).  Because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006), there may be limited circumstances in which those involved in reviewing an inmate appeal may be held liable under section 1983.  However, the mere existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was somehow deficient.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Therefore, if Plaintiff seeks to impose liability on those who reviewed his appeals, he must clearly allege the requisite linkage between the violation complained of and the individual's involvement, Iqbal, 129 S.Ct. at 1949; Jones, 297 F.3d at 934.

### C.   Eighth Amendment Claim

Plaintiff alleges that Defendants acted with deliberate indifference by Defendants' "malicious misclassification" which resulted in Plaintiff's "basic human need to exercise," and "severe physical, mental and spiritual pain and suffering" as well as "in humane conditions." (Doc. 1 at 23-26.)  Additionally, Plaintiff alleges that Defendants acted with deliberate indifference to possible harm to himself or his family when attempting to force Plaintiff to become an informant in exchange for his release from the SHU.  (Id. at 24.)

9

1    The Eighth Amendment protects prisoners from inhumane methods of punishment and

2    from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir.

3    2006).  Extreme deprivations are required to make out a conditions of confinement claim, and

4    only those deprivations denying the minimal civilized measure of life's necessities are

5    sufficiently grave to form the basis of an Eighth Amendment violation.  Hudson v. McMillian,

6    503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted).  In order to state a claim

7    for violation of the Eighth Amendment, a plaintiff must allege facts sufficient to support a claim

8    that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.

9    E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d

10   1124, 1128 (9th Cir. 1998).

11   Plaintiff's complaint does not set forth facts supporting a claim that any of the named

12   Defendants knowingly disregarded a substantial risk of harm to his health or safety.  For

13   example, Plaintiff's allegations regarding Defendants' conduct in attempting to coerce Plaintiff

14   to become an informant do not demonstrate that Defendants acted with deliberate indifference to

15   Plaintiff's safety needs.  This does not state a plausible claim for relief because it raises only the

16   mere possibility of misconduct.  Iqbal, 129 S.Ct. at 1949.

17   **D.    Equal Protection Claim**

18   The Equal Protection Clause requires that persons who are similarly situated be treated

19   alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Shakur v.

20   Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be established by

21   showing that Defendants intentionally discriminated against Plaintiff based on his membership in

22   a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690,

23   702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of

24   Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were

25   intentionally treated differently without a rational relationship to a legitimate state purpose,

26   Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008);

27   Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Gerhart v. Lake

28   County, Mont., 637 F.3d 1013,

1022 (9th Cir. 2011); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Although Plaintiff alleges an equal protection violation, his complaint is devoid of any facts which would support a claim which identifies specific Defendants who intentionally and arbitrarily discriminated against him. Olech, 528 U.S. at 564 (citation omitted). Accordingly, Plaintiff's equal protection claim fails.

### E.    First Amendment Claims

#### 1.    Right to Association

Plaintiff's allegations that Defendants violated his First Amendment rights to association by classifying his permissible association or communication with other prisoners as gang activity fail, to state cognizable claims. "An inmate does not retain rights inconsistent with proper incarceration," and "freedom of association is among the rights least compatible with incarceration." Overton v. Bazzetta, 539 U.S. 126, 131 (2003) ( "[s]ome curtailment of that freedom must be expected in the prison context"); Jones v. North Carolina Prisoners Labor Union, Inc., 433 U.S. 119, 125 (1977) (finding that rights curtailed in prison include associational rights that are protected outside the prison.). Accordingly, Prisoner's claim regarding his rights to association are not cognizable.

///

#### 2.    Retaliation Claims

Plaintiff additionally appears to allege that Defendants retaliated against him by "denying him  adequate means" to practice his Muslim religious beliefs and in response to his "identifying and communicating with" members of his race. (Doc.  1 at 14.)  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (quotation marks omitted); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff's conclusory allegations that Defendants retaliated against him are insufficient as there are no facts supporting the existence of a retaliatory motive.  A bare allegation of retaliation is insufficient to support a plausible claim for relief.  Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

### 3.   Access to Reading Materials and Plaintiff's Tattoos and his Right to Free Expression

Plaintiff contends that his First Amendment rights were violated when he was placed in the SHU based, in part, on his: (1) possession of written material reflecting the name and CDCR number belonging to George Lester Jackson, who Defendant Williams indicates was a co-founder of the BGF; and (2) personal tattoos which Plaintiff asserts are forms of "innocent self-expression."  (Doc. 1 at 22- 23, 53.)

A prisoner retains "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). In Turner v. Safely, 482 U.S. 78 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  Id. at 89.

The Turner Court identified four factors to consider when determining whether a regulation is valid:  (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" exist. Id. at 89–90.

Here, because Plaintiff has failed to clearly allege the requisite linkage between the violations complained of and the individual's involvement, Plaintiff's has failed to state a cognizable claim.  Iqbal, 129 S.Ct. at 1949; Jones, 297 F.3d at 934.

### F.   Plaintiff's claim of conspiracy

Plaintiff asserts that Defendants G. Williams, D. Williams, Turmezi, Berwer, Burt,

1  Kisser, and Covello as well as Does 1-18 conspired to deprive Plaintiff of his constitutional

2  rights as alleged.   (Doc. 1 at 25-26.)

3          To prove a conspiracy in violation of 42 U.S.C. § 1983, plaintiff must allege facts to

4  establish: (1) an agreement between the defendants to deprive the plaintiff of a constitutional

5  right; (2) an overt act in furtherance of the conspiracy; and (3) a constitutional violation.

6  Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999); Mendocino Environmental

7  Center v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).  "Vague and conclusory

8  allegations of official participation in civil rights violations" without more facts will not sustain a

9  claim.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (conclusory allegations of

10  conspiracy insufficient to support a claim under section 1983 or 1985).  Plaintiff has failed to

11  provide sufficient facts to demonstrate a conspiracy.

12          Moreover, because Plaintiff has failed to demonstrate any violations of his constitutional

13  rights, his claim of a conspiracy likewise fails.  Woodrum v. Woodward County, 866 F.2d 1121,

14  1126 (9th Cir. 1989) (failure to show agreement and deprivation of rights fatal to conspiracy

15  claim).          **G.**      **Plaintiff's state law claims**

16          The remainder of Plaintiff's claims fall under the province of state law.  For example,

17  Plaintiff asserts claims under the California Constitution and for violation of alleged mandatory

18  duties by Defendants under state law.  Plaintiff is advised that federal courts are courts of limited

19  jurisdiction, see Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994), and

20  this Court lacks jurisdiction under either 28 U.S.C. § 1331 or § 1332 to adjudicate Plaintiff's

21  state law claims.  Therefore, should the Court ultimately dismiss Plaintiff's federal claims from

22  this action, Plaintiff is advised that he must pursue his state law claims in state court.  See United

23  Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (a district court should not exercise

24  supplemental jurisdiction over state law claims when the federal claims giving rise to

25  supplemental jurisdiction are dismissed before trial).

26          **H.**      **Leave to Amend**

27          The Court will provide Plaintiff with the opportunity to file an amended complaint curing

28  the deficiencies identified by the Court in this order, to the extent possible.  See Noll v. Carlson,

809 F.2d 1446, 1448-49 (9th Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quotations omitted).  If Plaintiff elects to file an amended complaint, he is cautioned that he may not change the nature of this suit by adding new, unrelated claims.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Moreover, Plaintiff is advised that once he files an amended complaint, his original pleadings are superceded and no longer serve any function in the case.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  The amended complaint must therefore be "complete in itself without reference to the prior or superceded pleading."  Local Rule 220.  "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted).

**IV.   CONCLUSION**

Accordingly, it is **HEREBY ORDERED** that:

1.   Plaintiff's complaint is **DISMISSED**;

2.   Plaintiff is granted thirty (30) days from the date of service of this order to file an amended complaint that complies with the requirements of the Federal Rules of Civil Procedure and the Local Rules; the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint";

3.   The Clerk of the Court is directed to send Plaintiff the form complaint for use in a civil rights action; and

4.   Plaintiff is cautioned that failure to comply with this order will result in the dismissal of this action.

IT IS SO ORDERED.

Dated:   **November 8, 2011**                      _____
                                                              **/s/ Jennifer L. Thurston**
                                                         UNITED STATES MAGISTRATE JUDGE